**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| H. P., a minor, by and through her father, W.P. | ) <br> ) <br> ) <br> ) Case Number: _____ <br> ) <br> ) <br> ) <br> ) <br> ) Judge: <br> ) <br> ) Magistrate Judge: <br> ) <br> ) <br> ) <br> ) DEMAND FOR JURY TRIAL <br> ) |
| Plaintiff, | |
| v. | |
| NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT #203 | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff H.P., a minor, by and through her father W.P. and her attorney, Jeffery M. Hagen, bring this action for declaratory judgment, injunctive relief and damages against Defendant, Naperville Community Unit School District 203, an Illinois public body and corporate, for disability discrimination.

**JURISDICTION AND VENUE**

1.  This claim arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (hereinafter the "ADA), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. (hereinafter Section 504).

2.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 42 U.S.C. § 3613 and 42 U.S.C. § 12133. Jurisdiction

for declaratory relief is provided by 28 U.S.C. §§ 2201 & 2202. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to decide state-law claims that are both pendent and ancillary.

3. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, since Plaintiff and Defendant reside and are located within the boundaries thereof and all acts complained of occurred within the boundaries thereof. 28 U.S.C. § 1391.

## PARTIES

4. H.P. is an Illinois resident who currently lives in the Village of Lisle, Illinois and, until July 2016, lived in neighboring Naperville, Illinois.

5. Naperville Community Unit School District 203 ("District 203") is a public body and corporate established as a school district under the Illinois School Code (105 *ILCS* 5/10-10) with the powers enumerated therein (105 *ILCS* 5/1-1, *et seq.*).

## NATURE OF THE ACTION

6. H.P. seeks declaratory and injunctive relief enjoining Defendant from enforcing its discriminatory policy denying out-of-district student enrollment without regard to the student's individual circumstances due to the policy's disparate harmful impact on students with disabilities.

## STATUTORY FRAMEWORK

7. The ADA provides, in relevant part, that "no qualified individual with

a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12l32.

8.   Section 504 provides, in relevant part, that:

    (a)    "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a); and

    (b)    For the purposes of this section, the term 'program or activity' means all of the operations of

        (1)(A)  . . . a department, agency, special purpose district or other instrumentality ... of a local government; or

        (1)(B)  the entity of such ... local government that distributes such [federal] assistance and each such department or agency . . . to which the [federal] assistance is extended, in the case of assistance to a ... local government." *Id.,* at subsections (b)(1)(A) and (B).

9.   H.P. is an intended beneficiary of the ADA, and Section 504. *See*  42 U.S.C. § 12102(2); 29 U.S.C. § 794.

## STATEMENT OF FACTS

10.  Plaintiff's father, W.P., and her mother were divorced in 2008.

3

11. After her parents' divorce, H.P. resided with her mother in Naperville, Illinois.

12. Sometime after her parents' separation and divorce, H.P. began experiencing various medical issues including anxiety, depression, sleep disturbances, and seizures.

13. In August 2009, H.P. was diagnosed with epilepsy and subsequently prescribed Keppra to control seizures.

14. District 203, acknowledging the substantial limitations H.P.'s disability put on her ability to learn, developed Individual Education Plans (IEP's) providing H.P. with special education classes and services.

15. In late 2013 and early 2014, H.P. received inpatient treatment at Linden Oaks in Naperville for treatment of school avoidance issues, anxiety, depression, and an obsessive-compulsive disorder. H.P. was prescribed Celexa and Melatonin, along with Keppra, for her depression, anxiety, and sleep disorders.

16. In August 2014, H.P. began high school at Naperville Central High School.

17. In the latter part of 2014, H.P.'s mother attempted suicide on four occasions. After a December 2014 suicide attempt, H.P.'s mother was hospitalized for much of December 2014 and January 2015. After her release from the hospital, H.P.'s mother lived with her parents before renting a home in Naperville for her and H.P.

18. H.P.'s mother was subsequently in and out of hospitals during 2015 and early 2016. As her mother's mental health problems increased, H.P.'s father became more active in H.P.'s education and home environment.

19. In January 2015, District 203 conducted H.P.'s last IEP conference at which time H.P. and W.P. decided it was in H.P.'s best interest to enroll in general education classes. District 203 discouraged this decision, but nevertheless, informed H.P. and her father that she would no longer be eligible for special education classes and services.

20. H.P. completed her sophomore year at Naperville Central High School without special education services while dealing with her mother's continuing mental health issues.

21. In May 2016, H.P.'s mother committed suicide in the home she shared with H.P.

22. H.P. was devastated by the death of her mother and could not bear to reside in the home where her mother died.

23. Sensitive to his daughter's pain, W.P. moved H.P. from her home in Naperville to his home in neighboring Lisle, Illinois shortly before the start of H.P.'s junior year in high school.

24. W.P.'s home is in a subdivision of Lisle called Hidden Lake.

25. Hidden Lake is attached to Woodridge School District #68 and Community High School District #99 (individually, "District 68" and

"District 99;" collectively "Districts 68 and 99").

26. School buses serving Hidden Lake must enter and exit Hidden Lake through another Lisle subdivision attached to District 203.

27. The residents of Hidden Lake have been seeking, for over a year, to detach Hidden Lake from Districts 68 and 99 and attach it to District 203, and are currently litigating whether Hidden Lake must be attached to District 203, as a matter of law.

28. Naperville Central High School is 5.3 miles from W.P.'s home while the District 99 high schools are 7.2 miles from W.P.'s home.

29. Given the death of H.P.'s mother shortly before the start of the school year, W.P. enrolled H.P. in Naperville Central High School for her junior year to maintain some semblance of stability in her life.

30. During her junior year, H.P. continued to attend general education classes, including an advanced placement class; was designated to be a teaching assistant in her senior year; and became an active member and officer of Future Farmers of America (FFA), a club that is not offered in District 99 high schools.

31. H.P. will commence her senior year in high school in August 2017.

32. During her first two and a half years of high school, the instability in H.P.'s home life caused anxiety, stress and depression that adversely impacted her ability to learn. Now that she is in a stable home environment and educational environment with a support structure that includes family, friends, teachers, and school administrators,

she has been able to focus on completing high school and setting post high school goals.

33. In July 2017, W.P. requested that District 203 allow H.P. to enroll for her senior year at Naperville Central High School so that she could remain in a stable, supportive educational environment while she continues to recover from tremendous personal trauma.

34. District 203 denied W.P.'s request claiming that it is the District's policy to deny all out-of-district enrollments regardless of the student's individual circumstances – "no exceptions" (hereinafter the "Out-of-District Enrollment Policy").

35. W.P.'s subsequent request for an accommodation due to H.P.'s disability pursuant to the ADA and Section 504 were also denied.

36. Epilepsy and anxiety disorders can be managed; but have no known cure.

37. District 203 acknowledged H.P.'s disability by implementing IEP's for which counselors, psychologists and teachers had the opportunity to review H.P.'s disability and its negative impact on her ability to learn – a major life activity.

38. District 203's denial of W.P.'s request for an accommodation puts H.P.'s health and educational success at risk.

39. District 203's policy which forces H.P. out of a stable school environment without consideration of her disability shows deliberate indifference to that disability.

40. District 203's Out-of-District Enrollment Policy is discriminatory in that it has a disparate harmful impact on students with disabilities.

41. In addition to the policy's disparate harmful impact, District 203's refusal to make a reasonable accommodation for an individual with a disability is in itself discriminatory.

**CLAIMS**

**COUNT I**
**Violation of the Americans with Disabilities Act and**
**Section 504 of the Rehabilitation Act of 1973**

42. Plaintiff re-alleges the facts stated in paragraphs 1 through 41 and incorporates them by reference in this Count I as if fully set forth herein.

43. District 203 violates the Americans with Disabilities Act:

    a. by excluding from participation or denying the benefits of services, programs, or activities of a public entity, or discriminating against a qualified individual with a disability, by reason of a disability; or alternatively;

    b. by failing to provide a reasonable accommodation to permit a person with a disability to receive the benefits of services, programs, or activities of a public entity.

44. In addition, District 203 activities, including denying enrollment of out-of-district students, without consideration of their disability, and the administrative processes and/or decisions in connection with this blanket policy are "programs or activities" of a unit of local

8

government pursuant to 29 U.S.C. § 794 (b)(1)(A).

45. On information and belief, District 203 is a recipient of Federal financial assistance.

46. District 203's actions described herein exclude H.P. from participation in, denies her the benefits of, and subjects her to discrimination under a program or activity of District 203 by inflicting a disparate harmful impact on the disabled, in violation of Section 504 (29 U.S.C. § 794(a)).

47. Since she is a seventeen year old high school student residing in Illinois, H.P. meets the eligibility requirements to receive a public education, and is, therefore, an "otherwise qualified individual with a disability" pursuant to Section 504 (29 U.S.C. § 794(a)) .

48. H.P. is a "person aggrieved" pursuant to Section 504 (29 U.S.C. § 794a(a)(2)) who has suffered injury by the actions of District 203 described herein.

**THEREFORE**, Plaintiff requests that this court:

a. Declare District 203's Out-of-District Enrollment Policy discriminatory due to its disparate harmful impact on disabled students or, alternatively, declare District 203's failure to accommodate discriminatory;

b. Declare that District 203 violated the ADA and Section 504 in denying H.P. enrollment at Naperville Central High School;

c. Permanently enjoin District 203 from denying H.P. enrollment for

her senior year at Naperville Central High School;

d. Award statutory damages and penalties, as provided by law;

e. Award Plaintiff her costs and attorneys' fees incurred in connection with this action; and

f. Grant any other such further relief as this Court deems just and equitable.

## COUNT II
## Petition for Declaratory Relief

49. Plaintiff re-alleges the facts stated in paragraphs 1 through 48 and incorporates them by reference in this Count II as if fully set forth herein.

50. The Illinois School Act and long-standing court decisions define an "efficient system" of public education to include school districts that comprise territory that is "compact" and "contiguous" (see 105 *ILCS* 5/7-4; *People ex rel. Leighty v. Young*, 301 Ill. 67, 70 (Ill., 1922)).

51. Compact is defined as being "closely and firmly united." *People ex rel. Cant v. Crossley*, 261 Ill. 78, 99 (Ill., 1913). The territory comprising a school district "should be compact for that purpose and there should be no intervening territory." *People ex rel. Leighty v. Young*, 309 Ill. 27, 32 (Ill., 1923).

52. An actual controversy exists between the parties with respect to the validity of Hidden Lake's attachment to Districts 68 and 99.

53. A declaratory judgment is necessary to determine the rights and responsibilities of the parties to this controversy.

54. School buses from Districts 68 and 99 must go through District 203 to enter and exit Hidden Lake.

55. Hidden Lake must, as a matter of law, be detached from Woodridge School District #68 and Community High School District #99 and annexed to Naperville Community Unit School District 203 since there are no roads leading directly from Districts 68 and 99 into Hidden Lake (i.e., with Hidden Lake included, Districts 68 and 99 are not "compact and contiguous" as required by the Illinois School Code (105 *ILCS* 5/7-4(c) since District 203 is an intervening territory).

56. Plaintiff seeks a Declaratory Judgment that, as a matter of law, Hidden Lake must be attached to District 203, therefore, H.P. cannot be denied enrollment in the only school district that is compact and contiguous with Hidden Lake.

**THEREFORE**, Plaintiff requests that this court:

a. Find that Districts 68 and 99 are not compact and contiguous with Hidden Lake included;

b. Find that District 203 is compact and contiguous with Hidden Lake included;

c. Order District 203 to enroll H.P. in Naperville Central High School for her senior year; and

d. Provide other such relief herein as this Court deems just and proper.

11

**COUNT III**
**Petition for Preliminary Injunction**

57. Plaintiff re-alleges the facts stated in paragraphs 1 through 56 and incorporates them by reference in this Count III as if fully set forth herein.

58. Defendants have denied H.P. enrollment in Naperville Central High School.

59. Activities related to enrollment for the school year commencing in August 2017 take place in late July and early August 2017.

60. If H.P. is prevented from participating in enrollment and beginning her school year at Naperville Central High School in August 2017 along with her classmates, she will be irreparably harmed.

61. An action at law will not adequately redress the injury caused by District 203's denial of H.P.'s enrollment in Naperville Central High School.

62. Plaintiff is likely to succeed on the merits of her underlying causes of action since District 203 has, in the past, acknowledged H.P.'s disability, District 203 has denied in writing H.P.'s request for an accommodation, and Hidden Lake must, as a matter of law, be attached to District 203 since all school buses entering and exiting Hidden Lake must go through District 203.

63. In absence of injunctive relief allowing H.P. to enroll and attend Naperville Central High School pending resolution of this litigation, H.P. would suffer greater harm than District 203 would if injunctive

relief is granted.

**THEREFORE**, Plaintiff requests that:

a.  The court enter a preliminary injunction pursuant to 735 ILCS
    5/11-102 enjoining and restraining defendant, Naperville
    Community Unit School District 203, from denying H.P. admission
    to Naperville Central High School for the school year commencing in
    August 2017.

b.  The preliminary injunction must be granted immediately and
    without bond.

c.  The preliminary injunction may be made permanent on final
    hearing and determination of this cause.

d.  Plaintiff may receive any other and further, or different, relief the
    court may deem equitable and proper.

                                        Respectfully submitted by,

Dated:  July 21, 2017                   /s/ Jeffery M. Hagen
                                        Law Office of Jeffery M. Hagen
                                        6173 Dixon Drive
                                        Lisle, Illinois 60532
                                        Tel. 630-333-8116
                                        Fax. 630-435-1954
                                        E-mail: jhagen@jmhagenlaw.com

                                        Attorney for Plaintiff