# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| H.P., a minor, by and through her father, W.P., | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 5377 |
| v. | ) ) ) | Jeffrey T. Gilbert<br>Magistrate Judge |
| NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT #203, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff H.P. ("Plaintiff") has sued Defendant Naperville Community Unit School District 203 ("Defendant") by and through her father, W.P. This matter is now before the Court on Defendant's Motion to Dismiss [ECF No. 36] and Plaintiff's Motion for Partial Summary Judgment [ECF No. 42]. For the reasons stated below, Defendant's Motion to Dismiss [ECF No. 36] is granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment [ECF No. 42] is denied as moot.

## I. BACKGROUND

The following facts are taken from Plaintiff's complaint. All well-pled allegations are taken as true for the purposes of the motion to dismiss now before the Court. *See Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017), *as amended* (Apr. 13, 2017).

Plaintiff lived in Naperville, Illinois, between 2008 and early 2016 and attended Naperville Central High School ("NCHS") in District 203. Complaint for Declaratory and Injunctive Relief ("Complaint"), [ECF No. 1], ¶¶ 4, 11, 16. In 2008, Plaintiff's parents divorced. *Id.* ¶ 10. After the divorce, Plaintiff began to suffer from anxiety, depression, sleep disturbances,

and seizures. *Id.* ¶ 12. In August 2009, Plaintiff was diagnosed with epilepsy and prescribed medication to control her seizures. *Id.* ¶ 13. In late 2013 and early 2014, Plaintiff received inpatient treatment for school avoidance issues, anxiety, depression, and an obsessive-compulsive disorder. *Id.* ¶ 15. At that time, Plaintiff was prescribed additional medication to treat her anxiety, depression, and sleep disorders. *Id.* Throughout 2014, 2015, and part of 2016, Plaintiff's mother, who suffered from mental health problems of her own, attempted suicide multiple times and was hospitalized. *Id.* ¶¶ 17–18. In May 2016, Plaintiff's mother committed suicide. *Id.* ¶ 21. Plaintiff alleges she was devastated by this traumatic event. *Id.* ¶ 22.

During her time in school, Plaintiff's anxiety, stress, and depression adversely impacted her ability to learn. *Id.* ¶ 32. On an unspecified date, Defendant created an Individual Education Plan ("IEP") for Plaintiff to provide her with special education classes and services. *Id.* ¶ 14. As the mental health of Plaintiff's mother deteriorated in 2015 and 2016, Plaintiff's father become more active in managing Plaintiff's education and home environment. *Id.* ¶ 18. In January 2015, Defendant conducted an IEP conference with Plaintiff and her father. *Id.* ¶ 19. During the conference, Plaintiff and her father decided Plaintiff should enroll in general education classes. *Id.* Defendant counseled them against this course of action and told Plaintiff that she would no longer be eligible for special education classes and services. *Id.* Plaintiff and her father still decided she did not need an IEP, and no further IEP conferences were held. *Id.*

Plaintiff spent her first two years in high school, during which she lived in District 203, at NCHS. *Id.* ¶ 16. After her mother died, Plaintiff moved to her father's home in Hidden Lake, which is a subdivision in Lisle, Illinois. *Id.* ¶¶ 23–24. Hidden Lake is in Woodridge School District 68 ("District 68") and Community High School District 99 ("District 99"). *Id.* ¶ 25. Although Plaintiff no longer lived in District 203, she attended NCHS during her junior year,

where she took AP classes, became a member and officer of Future Farmers of America, and earned a teaching assistant position for her senior year. *Id.* ¶¶ 29, 30; *see also id.* ¶ 32. When Plaintiff asked Defendant if she could enroll in NCHS for her senior year, Defendant refused based on its alleged policy of denying all out-of-district enrollments without consideration of a student's individual circumstances ("Out-of-District Enrollment Policy"). *Id.* ¶¶ 33, 34. Plaintiff's father requested an accommodation for Plaintiff given her circumstances, but Defendant persisted in its position. *Id.* ¶ 35.

The residents of Hidden Lake have spent more than a year trying to have Hidden Lake detached from Districts 68 and 99 and attached to District 203. *Id.* ¶ 27. Plaintiff's home in Hidden Lake is about 2 miles closer to NCHS than to a high school in District 99. *Id.* ¶ 28. Also, school buses serving Hidden Lake must travel through a separate subdivision that is a part of District 203 in order to get between Hidden Lake and the schools in Districts 68 and 99. *Id.* ¶ 26. To date, the residents of Hidden Lake have not been successful in their attempts to have Hidden Lake detached from Districts 68 and 99 and attached to District 203. *Id.* ¶ 27.

On July 21, 2017, Plaintiff filed a three-count Complaint for Declaratory and Injunctive Relief. In Count I, Plaintiff alleges claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq. Id.* ¶¶ 43–48, p. 9–10. In Count II, Plaintiff alleges the Illinois Constitution requires that Hidden Lake be detached from Districts 68 and 99 and seeks "a Declaratory Judgment that, as a matter of law, Hidden Lake must be attached to District 203, [and] therefore, [Plaintiff] cannot be denied enrollment in" District 203. *Id.* ¶ 56. Finally, Count

III does not set forth an independent legal claim, but, rather, only requests the relief of a preliminary injunction based on the allegations in Counts I and II. *Id.* ¶¶ 57–63.[1]

## II.   LEGAL STANDARD

1.   **Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 741 (N.D. Ill. 2014). A complaint will survive this test "if, after the court disregards any portions that are no more than conclusions, [the complaint] contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)) (internal quotation marks omitted). A complaint must contain more than bare and conclusory allegations and must do more than create a sheer possibility that a defendant acted unlawfully. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016); *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015). But the "plausibility standard is not akin to a probability requirement." *Diedrich*, 839 F.3d at 589 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir.), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, a court must draw all

---

[1] On August 1, 2017, Plaintiff filed a motion for a preliminary injunction. [ECF No. 9]. On August 16, 2017, the Court held a preliminary injunction hearing and denied Plaintiff's motion in an oral ruling. [ECF No. 32].

reasonable inferences in the light most favorable to the plaintiff. *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 730 (7th Cir. 2016).

## 2. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is governed by the plausibility standard that applies to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff "the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

## III. DISCUSSION

### 1. Defendant's Motion to Dismiss

Defendant has moved to dismiss each count in Plaintiff's Complaint.

### a. Count I

In Count I, Plaintiff alleges Defendant has violated Title II of the ADA and Section 504 of the Rehabilitation Act. A violation of the ADA or the Rehabilitation Act may be proven by showing disparate treatment, failure to provide a reasonable accommodation, or disparate impact.[2] *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). The last two types of proof are at issue in this lawsuit. Plaintiff's Response to Defendant Naperville Community Unit School District #203's Motion to Dismiss Plaintiff's Complaint ("Plaintiff's Response"), [ECF No. 44], at 10. Plaintiff alleges Defendant has failed to provide her with a reasonable accommodation because it refuses to waive its Out-of-District Enrollment

---

[2] There is no difference between the ADA and the Rehabilitation Act that is material to the claims in this lawsuit, and no party argues otherwise. *See Golden v. Indianapolis Hous. Agency*, --- Fed. App'x --- , 2017 WL 4675734, at *2 (7th Cir. Oct. 17, 2017); *Saffold v. S. Suburban Coll.*, 2016 WL 4429650, at *3 (N.D. Ill. Aug. 22, 2016); *see also Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Policy so that she can attend NCHS during her senior year of high school. *Id.*; Complaint, [ECF No. 1], ¶¶ 33–39, 41, 42–48, p. 9–10. To prevail on this claim, Plaintiff will have to show that "she is a qualified individual with a disability and that [Defendant] was aware of her disability yet failed to provide her with a reasonable accommodation." *Klene v. Trustees of Indiana Univ.*, 413 F. App'x 919, 920 (7th Cir. 2011). Plaintiff also alleges the Out-of-District Enrollment Policy has a disparate impact on disabled students. Plaintiff's Response, [ECF No. 44], at 10; Complaint, [ECF No. 1], 40–48, p. 9–10. To prevail on this claim, Plaintiff will have to show the Policy "fall[s] more harshly on one group than another and cannot be justified by [a nondiscriminatory] necessity." *Swan v. Bd. of Educ. of City of Chicago*, 2013 WL 4401439, at *12 (N.D. Ill. Aug. 15, 2013) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)) (internal quotation marks omitted). Defendant argues Plaintiff has not plausibly facts to support either claim.

Defendant first contends Plaintiff "has not established that she is disabled." Memorandum in Support of Defendant Naperville Community Unit School District #203's Motion to Dismiss ("Defendant's Brief"), [ECF No. 37], at 6. "A disability is 'a physical or mental impairment that substantially limits one or more major life activities.'" *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 722 (N.D. Ill. 2015) (quoting 42 U.S.C. § 12102(1)(A)). A major life activity is "an activity of central importance to daily life," such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640, 663 (N.D. Ind. 2006) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002); 45 C.F.R. § 84.3(j)(2)(ii)) (internal quotation marks omitted). The substantial limitation standard is not demanding and is satisfied if an individual is "significantly restricted as to the condition, manner or duration under

[she] can perform the major life activity as compared to the average person in the general population." *Khan*, 147 F. Supp. 3d at 722 (quoting 29 C.F.R. §1630.2(j)(1)).

At this stage of the litigation, Plaintiff is not required to "establish" that she is disabled. She only needs plausibly to allege as much. *See* Defendant's Brief, [ECF No. 37], at 6; *see also* Defendant Naperville Community Unit School District #203's Reply Brief in Support of Its Motion to Dismiss ("Defendant's Reply"), [ECF No. 47], at 2–3. Because Plaintiff's Complaint sets forth a chronological narrative, there is some lack of specificity and clarity regarding the current state of Plaintiff's alleged disabilities. Plaintiff, though, alleges she has suffered from anxiety, depression, sleep disturbances, seizures, epilepsy, and obsessive-compulsive disorder; and received treatment for at least some of these conditions, including inpatient treatment and medication. Complaint, [ECF No. 1], ¶¶ 12–13, 15; *see also id.* ¶ 36. Plaintiff also says these conditions have adversely impacted her ability to learn, which is a major life activity. *Id.* ¶ 32.[3] Plaintiff claims that, because of these conditions, Defendant's refusal to allow her to attend NCHS could adversely impact her health and educational success by forcing her out of a stable school situation. *Id.* ¶¶ 38–39. In spite of the ambiguities in Plaintiff's Complaint, she has alleged enough to support a reasonable inference at the pleading stage of this case that she has a disability within the meaning of the ADA and the Rehabilitation Act.

Defendant next asserts that, even if Plaintiff has a disability, she is not a "qualified person" with a disability. Under the ADA and the Rehabilitation Act, a "qualified individual with a disability . . . means: [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices[,] . . . meets the essential eligibility requirements for

---

[3] Defendant thought Plaintiff's conditions impacted her ability to learn to a degree that she needed an IEP. Complaint, [ECF No. 1], ¶¶ 14, 37. Although Plaintiff and her father enrolled Plaintiff in general education classes in January 2015, they did so against District 203's recommendation. *Id.* ¶ 19.

the receipt of services or the participation in programs or activities provided by a public entity."
*Brumfield v. City of Chicago*, 735 F.3d 619, 625 (7th Cir. 2013) (quoting 42 U.S.C. § 12102(2));
*see also Novak v. Bd. of Trustees of S. Illinois Univ.*, 2014 WL 2993708, at *8 (S.D. Ill. July 3,
2014). Defendant says Plaintiff is not qualified because an essential eligibility requirement to
attend NCHS is that a student lives in District 203. Plaintiff does not dispute residence in
District 203 is an eligibility requirement, and she admits in her Complaint that Hidden Lake is
attached to Districts 68 and 99, not District 203.[4] Plaintiff contends, though, that Defendant
should accommodate her disability by waiving the Out-of-District Enrollment Policy. If
Defendant must do so and that accommodation is reasonable, then Plaintiff would be a qualified
individual with a disability because she is "an individual with a disability who, with . . .
reasonable modification to rules, policies, or practices" could attend school in District 203.

To be reasonable, an accommodation must be efficacious and "proportional to the costs
to implement it." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784
(7th Cir. 2002). An accommodation that requires a fundamental alteration to the relevant
program is not reasonable. *Klene*, 413 F. App'x at 920; *Oconomowoc*, 300 F.3d at 784.
Determining whether a particular accommodation is reasonable "is a highly fact-specific
inquiry." *Oconomowoc*, 300 F.3d at 784. Defendant asserts that waiving the Out-of-District
Enrollment Policy would fundamentally alter its educational programs and potentially impose an
undue burden on Defendant.

Defendant relies heavily on one case decided by the Sixth Circuit in 1997. *McPherson v.
Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir. 1997) (en banc). In *McPherson*,
a high school student challenged a rule, promulgated by the Michigan High School Athletic

---

[4] Plaintiff contends the Court should detach Hidden Lake from Districts 68 and 99 and attach it to District 203, thereby making her a qualified individual. For the reasons discussed later in this Memorandum Opinion and Order, this theory is unworkable.

Association ("MHSAA"), that barred any student who had completed eight semesters of high school from participating in interscholastic sports competition. *Id.* at 455. The student, who had ADHD and a seizure disorder, wanted to play basketball during his senior year but was ineligible because he had repeated the eleventh grade. *Id.* at 455, 461. On appeal, the Sixth Circuit vacated a preliminary injunction, entered by the district court, that forbade the enforcement of the rule. The Sixth Circuit concluded that, even though the MHSAA voluntarily waived the eight-semester rule in certain circumstances, the rule still was "a necessary one to the [Michigan high school] sports programs" and waiving it would fundamentally alter MHSAA's sports programs, leading to widespread abuses such as red-shirting. *Id.* at 461–63. The court of appeals also found requiring a waiver would "impose an immense financial and administrative burden" because the MHSAA would have to make "'near-impossible determinations' about a particular student's physical and athletic maturity." *Id.* at 462. Therefore, the Sixth Circuit held waiving the eight-semester rule was not a reasonable accommodation. *Id.* at 460–63.

*McPherson* does not bear the weight Defendant places on it. The Sixth Circuit was reviewing the district court's entry of a preliminary injunction and its analysis turned in large part on the evidence the MHSAA introduced concerning the purpose and effect of the eight-semester rule and the significant impact of waiving it. This case is in a different procedural posture as the motion now before the Court seeks dismissal under Rules 12(b)(1) and (6). In deciding this motion, the Court must accept all properly pled allegations as true, draw all reasonable inferences in Plaintiff's favor, and not consider additional evidence, such as that submitted by the MHSAA in *McPherson*. Further, as the Seventh Circuit recognized in *Washington*, the Sixth Circuit's decision was "based upon a case-specific individualized assessment that entertaining a waiver argument under a rule that counted only enrolled

semesters, in some of which the student was academically ineligible, would give a green light to redshirting." *Washington*, 181 F.3d at 852. *McPherson* does not support the broad proposition that all waivers of an essential eligibility requirement are unreasonable under the ADA and Section 504. In fact, the Seventh Circuit has found that, under different circumstances, waiving an analogous eight-semester rule constituted a reasonable accommodation. *Id.*

Beyond its reliance on *McPherson*, Defendant does little to develop and support an argument, based on the pleadings which is the appropriate inquiry at this stage of the case, that waiving the Out-of-District Enrollment Policy would represent a fundamental alteration of its educational programs. Plaintiff argues in response to Defendant's motion that her attendance at NCHS while residing in Hidden Lake will not disrupt the education that Defendant provides to its other students. This contention, again as a matter of pleading, perhaps finds some support in Plaintiff's allegation that she spent her junior year at NCHS even though she lived in Hidden Lake for the entire school year. Complaint, [ECF No. 1], ¶ 30. Plaintiff also asserts it would be administratively easy for Defendant now to incorporate her into the NCHS because she attended that school for her first three years of high school, and the personnel who work at NCHS already are familiar with her alleged disabilities. It may well be that, at the summary judgment stage or at trial, Defendant can show Plaintiff's requested accommodation is unreasonable as a matter of fact or law. Defendant has not shown, however, that, as a matter of law, Plaintiff can prove no set of facts to establish that allowing her to attend NCHS while residing in Hidden Lake would fundamentally alter any program Defendant provides in District 203.

Finally, Defendant argues Plaintiff's disparate impact claim must be dismissed because she has not alleged a harm that falls on a protected group, rather than on Plaintiff alone. Defendant cites *Farrell v. Butler University* for the proposition that a disparate impact claim

must be based on a policy (or practice), not on a decision that is specific to one person. 421 F.3d 609, 611 (7th Cir. 2005); *see also Nikolich v. Vill. of Arlington Heights, Ill.*, 870 F. Supp. 2d 556, 563–64 (N.D. Ill. 2012). Defendant's understanding of the law is correct. *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 2012 WL 1877740, at *6 (N.D. Ind. May 18, 2012). In this case, though, Plaintiff is challenging the Out-of-District Enrollment Policy, which allegedly applies to *all* out-of-district students without regard to the student's individual circumstances. Complaint, [ECF No. 1], ¶ 34.

Defendant's more meritorious argument is that, even if Plaintiff is challenging a policy that applies to a protected group, Plaintiff has not plausibly alleged the policy has a disparate impact on the members of that group. As the Seventh Circuit has noted, conclusory allegations that a policy has a disparate impact—such as saying it has a "disproportionate" effect or an "impermissible impact"—are not sufficient to survive a motion to dismiss. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014); *see also Anfeldt v. United Parcel Serv., Inc.*, 2017 WL 839486, at *2 (N.D. Ill. Mar. 3, 2017). In this case, Plaintiff's Complaint gives little voice to her disparate impact claim. In fact, the Complaint does no more than allege in a couple of conclusory sentences that the Out-of-District Enrollment Policy has a "disparate harmful impact" on students with disabilities. *See, e.g., id.* ¶¶ 6, 40; *see also* ¶ 41, p. 9. Plaintiff does not allege what negative effect the Out-of-District Enrollment Policy has on students with disabilities other than herself. Plaintiff also does not describe how that negative effect falls on students with a disability to a greater extent than other students. Therefore, the Complaint does not contain sufficient "factual material to move the disparate-impact claim[] over the plausibility threshold." *Adams*, 742 F.3d at 733.[5]

---

[5] In her response brief, Plaintiff articulates in more detail how, in her view, Defendant's Out-of-District Enrollment Policy has a disparate impact on disabled students. Plaintiff's representations in her brief are

For all of these reasons, Defendant's Motion to Dismiss is denied with respect to Plaintiff's failure to accommodate claim and granted with respect to Plaintiff's disparate impact claim, although that claim is dismissed without prejudice. If Plaintiff believes she can re-plead that claim so that it will pass muster, she is given leave to do so within 21 days.

### b. Count II

In Count II, Plaintiff claims that the attachment of Hidden Lake to Districts 68 and 99, rather than to District 203, violates the Illinois Constitution. Plaintiff asks that the Court enter a declaratory judgment stating that, as a matter of law, Hidden Lake must be detached from Districts 68 and 99 and attached to District 203, and order District 203 to enroll Plaintiff in NCHS. Complaint, [ECF No. 1], at p. 11 (Prayer for Relief). The Education Article of the Illinois Constitution provides that "[t]he State shall provide for an efficient system of high quality public educational instructions and services." ILL. CONST. art. X, § 1.[6] Plaintiff alleges that buses for Districts 68 and 99 must enter and exit Hidden Lake through another Lisle subdivision that is attached to District 203. Complaint, [ECF No. 1], ¶ 26.[7] According to Plaintiff, because no road leads directly from Hidden Lake to Districts 68 and 99, without going through District 203, Districts 68 and 99 are not compact and contiguous as currently configured

---

not rooted in corresponding allegations in the Complaint. "Argument in briefs [] is no substitute for allegations in pleadings." *Gandhi v. Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004, 1016 (N.D. Ill. 2010); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *Mann v. Bales*, 2017 WL 4340108, at *4 (N.D. Ill. Sept. 29, 2017); *United Leasing, Inc. v. Balboa Capital Corp.*, 2017 WL 3674926, at *4 (S.D. Ind. Aug. 25, 2017); *Cross v. Batterson*, 2017 WL 2798398, at *6 (N.D. Ill. June 28, 2017).

[6] This provision "corresponds to section 1 of article VIII of the 1870 Constitution, which stated, 'The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this state may receive a good common school education.'" *Comm. for Educ. Rights v. Edgar*, 672 N.E.2d 1178, 1185 (Ill. 1996) (quoting ILL. CONST. 1870 art. VIII, § 1).

[7] Plaintiff also alleges NCHS is a little under 2 miles closer to her home than is any high school in District 99. Complaint, [ECF No. 1], ¶ 27.

and, therefore, violate the constitutional requirement of an "efficient system" of education. *Id.* ¶¶ 51–56.

Defendant contends Count II must be dismissed because the Court lacks subject matter jurisdiction over Plaintiff's request for declaratory relief and because Plaintiff has failed to state a claim under the Education Article. Defendant first argues that Plaintiff cannot use this lawsuit to bypass the procedure created by the Illinois legislature for altering school district boundaries. The Illinois legislature has the exclusive prerogative to choose the procedures for creating school districts and school district boundaries. *See Bd. of Ed. of Addison Sch. Dist. No. 4, DuPage Cty. v. Gates*, 316 N.E.2d 525, 529 (Ill. App. Ct. 1974). The Illinois School Code provides for the filing of a petition to detach and annex territory from a school district with the appropriate regional board of school trustees. *See Bd. of Educ. of Marquardt Sch. Dist. No. 15 v. Reg'l Bd. of Sch. Trustees of Du Page Cty.*, 969 N.E.2d 431, 438 (Ill. App. Ct. 2012) ("We observe that school district boundary changes are governed by article 7 of the School Code."); 105 ILL. COMP. STAT. 5/7-1. Under the Illinois Administrative Review Law, the regional board of school trustees' resolution of a petition is deemed an "administrative decision," and the circuit court of the county in which the dissolving district or detaching territory is located has sole jurisdiction over a complaint seeking review of the decision. 105 ILL. COMP. STAT. 5/7-7.

Defendant says that the residents of Hidden Lake filed an unsuccessful petition to detach their subdivision from Districts 68 and 99 and to annex it to District 203.[8] According to Defendant, this Court cannot review that type of administrative decision under the Illinois Administrative Review Law. In response, Plaintiff points out that she is not seeking review of

---

[8] The parties in this case dispute whether, in ruling on Defendant's Motion to Dismiss, the Court may consider several documents attached to Defendant's brief in support of its motion to dismiss that set forth the basic facts concerning the filing and disposition of the residents' petition. The Court need not address this issue because, even if the Court were to consider those documents, they would have no impact on this ruling.

the denial of the residents' petition. The Court agrees with Plaintiff's characterization of her claim. Plaintiff's complaint includes only one allegation that even vaguely alludes to the residents' efforts. Complaint, [ECF No. 1], ¶ 27. At no point does Plaintiff allege the petition was wrongfully denied or that the Illinois School Code requires the attachment of Hidden Lake to District 203. Instead, Plaintiff's claim in this case is that the attachment of Hidden Lake to Districts 68 and 99 violates the Illinois Constitution because the resulting districts are not compact and contiguous. *Id.* ¶¶ 49–56. Therefore, the Illinois Administrative Review Law does not deprive the Court of jurisdiction over the claim Plaintiff seeks to allege in Count II.

Defendant also seems to argue that a challenge to school boundaries such as the one at issue in this case *must* be brought through a petition under the Illinois School Code. Defendant cites no case that supports this broad proposition. As noted above, the Illinois Constitution protects the right to an efficient school system. ILL. CONST. art. X, § 1. The Illinois Supreme Court has held that school districts must be "compact and contiguous" for the school system to be efficient. *Edgar*, 672 N.E.2d at 1185. Defendant is right that, as a general matter, the Illinois legislature retains the exclusive power to deal with issues related to the efficiency, thoroughness, and quality of the school system, and the Illinois Constitution usually does not permit courts to intrude on that domain. *Lewis v. Spagnolo*, 710 N.E.2d 798, 802 (Ill. 1999); *Edgar*, 672 N.E.2d at 1185. Judicial review, however, is permitted in so-called "boundary cases" where the plaintiff claims school districts are not compact and contiguous and, therefore, violate the Illinois Constitution's guarantee of an efficient education. *Lewis*, 710 N.E.2d at 804; *Edgar*, 672 N.E.2d at 1185; *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.3d 976, 983 (Ill. App. Ct. 2013).

Defendant next argues that Count II should be dismissed because Plaintiff has not alleged that the attachment of Hidden Lake to Districts 68 and 99 has denied her access to a school. The Illinois Constitution guarantees an "efficient system" of education. To comply with that mandate, school districts must "enable the children to travel from their respective homes to the school building in a reasonable length of time and with a reasonable degree of comfort." *People ex rel. Leighty v. Young*, 133 N.E. 693, 694–95 (Ill. 1921). In other words, school districts must be "compact" and "contiguous." *Edgar*, 672 N.E.2d at 1185.[9] "The territory of a school district is compact and contiguous when it is so closely united and so nearly adjacent to the school building that all the students residing in the district, their ages considered, may conveniently travel from their homes to the school building and return the same day in a reasonable time and with a reasonable degree of comfort." *People ex rel. McLain v. Gardner*, 96 N.E.2d 551, 555 (Ill. 1951); *see also People ex rel. Cmty. Unit Sch. Dist. No. 1, Macon & DeWitt Ctys. v. Decatur Sch. Dist. No. 61*, 194 N.E.2d 659, 662 (Ill. App. Ct. 1963).

Whether a particular school district is compact and contiguous depends on the specific facts and circumstances. *Young*, 133 N.E. at 695. "[A] school district will not be held invalid for lack of contiguity or compactness unless . . . children of school age residing in the district cannot reasonably avail themselves of the privileges of the school." *Gardner*, 96 N.E.2d at 555; *see also Lewis*, 710 N.E.2d at 804 ("Under this exception, courts have declared invalid school districts that were configured in such a way as to deny students access to a school."); *People ex rel. Beedy v. Regnier*, 37 N.E.2d 186, 189 (Ill. 1941) ("[C]ourts do not hold a district invalid for lack of compactness or contiguity, unless it appears from the evidence that the children of school age residing in the district cannot reasonably avail themselves of the purposes of the school.");

---

[9] Illinois courts treat "compact" and "contiguous" "as inseparable (if not synonymous)." *People ex rel. Cmty. Unit Sch. Dist. No. 5 v. Decatur Sch. Dist. No. 61*, 203 N.E.2d 423, 425 (Ill. 1964); *see also People ex rel. Leighty v. Young*, 139 N.E. 894, 896 (Ill. 1923).

*People ex rel. Tudor v. Vance*, 29 N.E.2d 673, 675 (Ill. 1940) (same); *Macon & DeWitt*, 194 N.E.2d at 661 (same); *Streator Twp. High Sch. Dist. No. 40 of La Salle & Livingston Ctys. v. Cty. Bd. of Sch. Trustees of Livingston Cty.*, 144 N.E.2d 531, 535 (Ill. App. Ct. 1957) (same).

In this case, Plaintiff's Complaint contains just two allegations—excluding those which do no more than set forth legal conclusions—related to the notion that the attachment of Hidden Lake to Districts 68 and 99 rather than to District 203 violates the Illinois Constitutional guarantee that school districts be compact and contiguous. Plaintiff alleges her home in Hidden Lake is 7.2 miles from a high school in District 99 but only 5.3 miles from NCHS in District 203. Complaint, [ECF No. 1], at ¶ 28. She also alleges school buses serving Hidden Lake must enter and exit through territory that is part of District 203. *Id.* ¶¶ 27, 54. There are no other allegations in Plaintiff's complaint that even tangentially support Plaintiff's claim under the Illinois Constitution.

In responding to Defendant's motion, Plaintiff relies solely on her allegation that buses must travel through District 203 to get between Hidden Lake and schools in Districts 68 and 99. Plaintiff says this is "the epitome of inefficiency" and is a "dispositive fact." The Court disagrees with Plaintiff that her allegations are dispositive as a matter of law. Whether the configuration of Districts 68 and 99 violates the Illinois Constitution depends on whether Plaintiff is being deprived of reasonable access to the purposes of school. *See Regnier*, 37 N.E.2d at 189 and other cases cited *supra* p. 15–16. The mere fact that Plaintiff must ride on a bus that travels through another school district for an unspecified period of time to attend the high school in her assigned district is not dispositive. Without more, the solitary allegation upon

which Plaintiff relies is not sufficient to plausibly state a claim under the Illinois Constitution's Education Article much less establish her entitlement to relief as a matter of law.[10]

Plaintiff places great weight on the statement in one opinion, issued by the Illinois Supreme Court in 1923, that a school district must not have any "intervening territory." *People ex rel. Leighty v. Young*, 139 N.E. 894, 896 (Ill. 1923). Although the Illinois Supreme Court made this statement when describing the meaning of compact and contiguous, the problem with the district at issue in *Young* was not that it contained intervening territory but that the district stretched 10 miles from its west edge to its east edge and 10 miles from its northern edge to its southern edge. *Id.* at 895. As a result, some children in the district had to travel as much as 8 or 10 miles to get to school. *Id.* At least given the modes of transit available in 1923, children "could not reach the school conveniently from their homes in the time allotted them for travel before the school opens in the morning." *Id.* at 897. The Illinois Supreme Court thus held the school district was not compact or contiguous.

*Young* does not help Plaintiff. Plaintiff has not alleged that, like the plaintiffs in *Young*, she is unable to conveniently travel from her home to a high school in Districts 68 or 99 before the start of the school day. Moreover, *Young* does not undercut the authority cited above, which post-dates *Young*, stating that courts will not find a school district to be unconstitutional based on lack of compactness or contiguity unless a student cannot reasonably avail herself of the purposes of the school. Also, this is not an intervening territory case, at least not as alleged in the operative complaint. "Intervening territory" cases involve situations where a district is

---

[10] Plaintiff uses more colorful language to describe her legal theory in her reply brief filed in support of her motion for summary judgment on Count II of her Complaint: "It is an indisputable fact that Plaintiff's subdivision is, in effect, an island isolated from District 68 and 99, and the only way onto that island is through territory located in District 203." Plaintiff's Reply in Support of Motion for Summary Judgment on Count II of Plaintiff's Complaint ("Plaintiff's Reply"), [ECF No. 61], at 8. Though the Court appreciates the rhetorical flourish, it adds nothing substantive to the underlying facts already pled in the Complaint.

comprised of pockets of land that are completely detached from each other. *See, e.g., Bd. of Educ. of Rockford Sch. Dist. No. 205, Winnebago-Boone Ctys. v. Hearing Bd. of Ctys. of Boone & Winnebago*, 505 N.E.2d 32 (Ill. App. Ct. 1987); *Decatur Sch. Dist. No. 61*, 203 N.E.2d 423. There is no allegation in Plaintiff's complaint that Hidden Lake is unconnected to and not adjacent with other portions of Districts 68 and 99.[11] Therefore, as currently pled and for all of these reasons, Plaintiff has not stated a claim upon which relief can be granted in Count II of her Complaint.

Defendant's final argument is that any declaration the Court could enter in this case would amount to no more than an advisory opinion because the Court cannot as a matter of law order that Hidden Lake be detached from Districts 68 and 99 and attached to District 203. In her Complaint, Plaintiff seeks a declaratory judgment that has three components. She asks the Court to (1) declare that Districts 68 and 99 are not compact and contiguous with Hidden Lake; (2) declare that District 203 is compact and contiguous with Hidden Lake; and (3) to order District 203 to enroll Plaintiff in NCHS. Complaint, [ECF No. 1], at 11 (Prayer for Relief). In essence, Plaintiff wants the Court to declare that District 203 is Plaintiff's "legal district." Plaintiff's Response, [ECF No. 44], at 3. Defendant points out that, under the Education Article, courts only may declare boundaries invalid; they may not draw new boundaries. *Cent. Austin Neighborhood Ass'n*, 1 N.E.3d at 983 ("Courts do not have authority to draw boundaries of school districts, but the courts can declare boundaries invalid if the boundaries deprive citizens

---

[11] In support of her motion for summary judgment, Plaintiff has submitted a map displaying at least in part the districts at issue in this lawsuit. [ECF No. 43-1], at 4. The Court's ruling in this Memorandum Opinion and Order does not turn on the information reflected in this map, which would be an appropriate subject for judicial notice. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 n.3 (7th Cir. 2013) *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012); *United States v. Sessa*, 2011 WL 256330, at *25 n.12 (E.D.N.Y. Jan. 25, 2011), *aff'd*, 711 F.3d 316 (2d Cir. 2013). The Court notes, though, that the map seems to show there is no intervening territory separating Hidden Lake from Districts 68 and 99.

of constitutional or statutorily protected rights."). It would appear, therefore, that the Court cannot grant all of the relief Plaintiff seeks in her Complaint, at least to the extent that she seeks an order that Hidden Lake must be detached from Districts 68 and 99 and attached to District 203.

Plaintiff shifts gears a bit from her Complaint in responding to Defendant's motion to dismiss. Plaintiff says the limitation on the Court's jurisdiction to grant complete relief in this case is of no moment because once the Court "declares" that the attachment of Hidden Lake to Districts 68 and 99 rather than to District 203 is "invalid and void," then Plaintiff effectively would be a resident of District 203 and she, therefore, should be allowed to enroll in NCHS for her senior year of high school.[12] In essence, Plaintiff is seeking an advisory opinion in Count II of her Complaint that she should be deemed to reside in District 203 because she thinks that will aid her claim in Count I under the ADA and Section 504. According to Plaintiff, if the Court agrees with her on the question of whether the attachment of Hidden Lake to Districts 68 and 99 rather than to District 203 violates the Illinois Constitutional guarantee of an "efficient" school system, then that is game, set, and match on her ADA and Section 504 claims. That is the essence of an advisory opinion—it does not itself fully adjudicate the claim asserted in Count II but rather supposedly advises the outcome of the parties' dispute in Count I. As Plaintiff concedes in briefing her motion for summary judgment, the ruling she is seeking in Count II of

---

[12] Plaintiff articulates this theory more clearly in her briefs filed in support of her concurrent motion for summary judgment on Count II of her Complaint. For example, in her reply brief, Plaintiff says, "Plaintiff's motion does not request detachment and annexation of Hidden Lake . . . Plaintiff's motion 'requests that this court declare that the only school district that is 'compact' with Hidden Lake included is District 203 and, therefore, the attachment of Plaintiff's residence to Districts 68 and 99 is invalid and void.' Hidden Lake was attached to Districts 68 and 99 before this litigation began and it will be attached after it ends. The only thing that will change is Plaintiff will have a legal ruling on whether her residence is validly attached to Districts 68 and 99 and whether the only existing district that is 'compact' with her resident attached is District 203. A ruling in Plaintiff's favor will support her ADA and Section 504 claims in that she will overcome District 203's claim that she is not a 'qualified individual with a disability' eligible for a District 203 accommodation." Plaintiff's Reply, [ECF No. 61], at 6.

19

her Complaint will have no effect on the actual configuration of the school districts involved in this case: "Hidden Lake was attached to Districts 68 and 99 before this litigation began and it will be attached after it ends." Plaintiff's Reply, [ECF No. 61], at 6.

Even if the Court could issue a declaration that Districts 68 and 99 are not compact and contiguous on a complaint that properly states a claim for that kind of relief, that declaration would not remedy the harm of which Plaintiff complains in Count II of her Complaint given the Court's inability to attach Hidden Lake to District 203. Plaintiff states repeatedly in her briefs that the only purpose to be served by a declaratory judgment on the claim asserted in Count II of her Complaint is to establish that District 203 is Plaintiff's "legal residence" and thus that she is a qualified individual under the ADA and Section 504 because she meets the District's residency requirement. That is a problem. "It is a fundamental principle of federal jurisdiction that federal courts may not render advisory opinions on abstract legal questions." *Devine v. Robinson*, 131 F. Supp. 2d 963, 968 (N.D. Ill. 2001). A case or controversy presents a justiciable cause of action only if, among other things, it is something that "a favorable federal court decision likely would redress or remedy." *Id.* In this case, Plaintiff essentially concedes that she is not seeking in Count II of her Complaint to redress or remedy the harm of which she complains in that Count. She also concedes that the Court's decision on Count II will not change the status quo in terms of the configuration of Districts 68, 99, or 203. Rather, she wants the Court to decide an abstract legal question presented in Count II because she thinks she can use that decision to help her on Count I.

Plaintiff also does not explain how the Court could declare that Districts 68 and 99 are not compact and contiguous in a case in which those school districts are not parties and have not had an opportunity to weigh in on Plaintiff's claims. One might think those school districts have

20

somewhat of a stake in whether they are configured in violation of the Illinois Constitution. In the final analysis, though, there is no need for the Court to reach these jurisdictional issues because Count II does not state a claim for relief for the reasons stated above. If Plaintiff chooses to amend Count II, however, she will need to confront these issues as well.[13]

For all of these reasons, Count II is dismissed without prejudice. Again, if Plaintiff believes she can re-plead that claim so that it will pass muster, she is given leave to do so within 21 days. Although the Court is granting Plaintiff leave to re-plead Count II if she believes she can do so, Plaintiff does not have leave at this time to add additional parties. That would require a formal motion for leave to add defendants and a court order allowing Plaintiff to expand this case in that way.

### c. Count III

Defendant argues the Court should dismiss Count III of Plaintiff's Complaint as moot because the Court previously denied Plaintiff's Motion for Preliminary Injunction. *See* [ECF No. 32]. Plaintiff has not responded to this argument. In any event, Count III does not set forth an independent legal claim, but, rather, only contains a request for a preliminary injunction based on the claims alleged in Counts I and II. "[I]njunctive relief is not a separate type of claim, but rather a form of relief, and as such, should not be designated as a separate count in the Complaint." *Benhur v. Madavaram*, 2015 WL 6739109, at *6 (D.N.J. Nov. 2, 2015); *see also Onyango v. Downtown Entm't, LLC*, 525 F. App'x 458, 460 (7th Cir. 2013); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010); *Westway Holdings Corp. v. Tate & Lyle PLC*, 2009 WL 1370940, at *8 (D. Del. May 13, 2009). In this district, the practice is to

---

[13] The Court also notes that neither party has addressed whether the Court has subject matter jurisdiction over Plaintiff's claim in Count II of her Complaint seeking a declaratory judgment that the configuration of Districts 68 and 99 violates the Illinois Constitution. Plaintiff avers that the Court has supplemental jurisdiction to decide that state-law claim citing 28 U.S.C. § 1367. Complaint, [ECF No. 1], at ¶ 2. The Court has not yet decided whether that is an accurate statement.

dismiss separately pled counts that do no more than set forth a "claim" for injunctive relief. *Artistic Framing, Inc. v. Hosp. Res., Inc.*, 2013 WL 317019, at *2 (N.D. Ill. Jan. 24, 2013). Therefore, Count III is dismissed with prejudice as unnecessary and because it does not state a separate legal claim for relief.

For all of these reasons, Defendant's Motion to Dismiss [ECF No. 36] is granted in part and denied in part.

## 2. Plaintiff's Motion for Summary Judgment on Count II

Plaintiff has moved for summary judgment on Count II of her Complaint. Plaintiff's Motion for Partial Summary Judgment, [ECF No. 42]. As discussed above, Count II of Plaintiff's Complaint is dismissed without prejudice. That ruling moots Plaintiff's Motion for Summary Judgment on that Count. Accordingly, Plaintiff's Motion for Summary Judgment is denied without prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [ECF No. 36] is granted in part and denied in part, with prejudice as to Count III and without prejudice as to Counts I and II, and Plaintiff's Motion for Partial Summary Judgment [ECF No. 42] is denied without prejudice as moot.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 20, 2017