# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **H.P., a minor, by and through her father, W.P.,** | ) ) ) | |
| **Plaintiff,** | ) ) | **No. 17 C 5377** |
| **v.** | ) ) ) | **Jeffrey T. Gilbert** **Magistrate Judge** |
| **NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT #203,** | ) ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff H.P., by and through her father, W.P., has sued Defendant Naperville Community Unit School District 203 alleging that the District is discriminating against her as a person with a disability by refusing to waive its residency requirement and allow H.P. to attend high school in District 203 even though she no longer resides in that District. This matter is now before the Court on Plaintiff's Motion for Summary Judgment on Count I of Plaintiff's Complaint ("Plaintiff's Motion for Summary Judgment") [ECF No. 93] and Defendant's Motion for Summary Judgment on the Plaintiff's Complaint ("Defendant's Motion for Summary Judgment") [ECF No. 95]. For the reasons stated below, Plaintiff's Motion for Summary Judgment [ECF No. 93] is denied and Defendant's Motion for Summary Judgement [ECF No. 95] is granted.

## I.    BACKGROUND

Defendant Naperville Community Unit School District 203 ("Defendant") is an Illinois public school district established and operated pursuant to the Illinois School Code. Defendant's Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary

Judgment on the Complaint ("Defendant's SoF"), [ECF No. 97], ¶ 7; Plaintiff's LR56.1(3) Statement of Material Facts ("Plaintiff's SoF"), [ECF No. 94-1], ¶ 2.[1] One of the schools that Defendant operates is Naperville Central High School ("NCHS"). Plaintiff H.P. ("Plaintiff"), who is 17-years-old, was a student at NCHS during her freshman, sophomore, and junior years of high school. Defendant's SoF, [ECF No. 97], ¶¶ 1, 3; Plaintiff's SoF, [ECF No. 94-1], ¶¶ 17– 27, 29. For the 2017–18 academic year, Plaintiff enrolled at and is attending Downers Grove North High School ("DGNHS"), which is a public high school in Community High School District 99 ("District 99"). Defendant's SoF, [ECF No. 97], ¶ 24; Plaintiff's SoF, [ECF No. 94-1], ¶ 34.

Plaintiff's change in schools was not voluntary. In fact, she wants to complete her secondary education at NCHS. Plaintiff changed schools because she moved out of District 203. From 2008 until roughly the middle of 2016, Plaintiff lived with her mother in Naperville, Illinois, which is part of District 203. Defendant's SoF, [ECF No. 97], ¶ 22; Plaintiff's SoF, [ECF No. 94-1], ¶¶ 9, 25. Then, after her mother's tragic death in May 2016, Plaintiff went to live with her father, W.P., in Lisle, Illinois, which is part of District 99, not part of District 203.[2] Defendant's SoF, [ECF No. 97], ¶¶ 2, 4–6, 24–25; Plaintiff's SoF, [ECF No. 94-1], ¶¶ 7, 23, 25. It seems Defendant did not find out about Plaintiff's change of residence at that time. *See* Affidavit of Bob Ross, [ECF No. 98-1], ¶ 4. So Plaintiff was able to spend her entire junior year

_____

[1] The Court has deemed admitted paragraphs 20, 24, 25, 26, 29, 30, 35, 36, 40, 41, and 42 of Plaintiff's Local Rule 56.1(a)(3) Statement because Defendant's responses to these paragraphs do not comply with Local Rule 56.1. *See* Defendant's Response to Plaintiff's Statement of Facts Requiring Denial of Plaintiff's Motion for Summary Judgment, [ECF No. 98], ¶¶ 20, 24, 25, 26, 29, 30, 35, 36, 40, 41, 42. The most common, but not the only, flaw with these responses is Defendant's failure to cite evidence that supports its disagreement with Plaintiff's statements of fact. *See SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 763 (N.D. Ill. 2016).

[2] Plaintiff's mother committed suicide, which she also attempted to do on multiple occasions between late 2014 and early 2016. Plaintiff's SoF, [ECF No. 94-1], ¶¶ 19–20.

at NCHS even though she lived in Lisle. Plaintiff's SoF, [ECF No. 94-1], ¶¶ 26, 27. Defendant learned that Plaintiff no longer lived in District 203 before the start of the 2017–18 academic year and, when her father sought permission to enroll Plaintiff at NCHS for her senior year, Defendant refused. Defendant's SoF, [ECF No. 97], ¶¶ 26–27; Plaintiff's SoF, [ECF No. 94-1], ¶ 29.

Defendant denied W.P.'s request because Plaintiff lived outside District 203. Defendant's SoF, [ECF No. 97], ¶ 27; Plaintiff's SoF, [ECF No. 94-1], ¶ 30. According to Defendant's Board Policy 7:60 *Residence*, "[a] student must establish residence within the School District's boundaries in order to attend a School District school." Board Policy 7:60 *Residence*, [ECF No. 22-3]; *see also* Defendant's SoF, [ECF No. 97], ¶ 27. The Policy contains limited exceptions to the requirement of in-district residency for students who (1) move into District 203 within 60 days of the first day of attendance, (2) move out of District 203 during the school year, (3) change residence due to a legal custodian's military service obligation, (4) are homeless, or (5) are foreign exchange students. Board Policy 7:60 *Residence*, [ECF No. 22-3]; Defendant's SoF, [ECF No. 97], ¶ 28; Affidavit of Bob Ross, [ECF No. 98-1], ¶ 7.[3] It is undisputed that none of the exceptions to Defendant's "residency requirement," as the Court will refer to Defendant's policy, applies to Plaintiff.

After Defendant's initial denial, W.P. subsequently asked Defendant to waive its residency requirement and let Plaintiff attend NCHS as an accommodation for her disability under the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* Defendant's

---

[3] Plaintiff says one student was allowed to attend a school in District 203 while living in a relative's home that was located in an adjacent school district. Plaintiff's Local Rule 56.1(b)(3) Statement, [ECF No. 102], ¶¶ 28, 29. Defendant points out that, during her deposition, H.P. said this student was allowed to do so because she was considered homeless. Deposition of H.P., [ECF No. 103-1], at 48–49. In any event, the correct status of this lone student is not material to the parties' motions for summary judgment.

SoF, [ECF No. 97], ¶ 31; Plaintiff's SoF, [ECF No. 94-1], ¶ 31. Defendant again refused. Plaintiff's SoF, [ECF No. 94-1], ¶¶ 31, 33; *see also* Defendant's SoF, [ECF No. 97], ¶¶ 32–33. It is this sequence of events that led Plaintiff to enroll at DGNHS even though W.P. and she believe and contend that DGNHS does not provide the academic, social, or emotional support that Plaintiff needs. Plaintiff's SoF, [ECF No. 94-1], ¶ 35.

To understand W.P.'s request for an accommodation under the ADA and the Rehabilitation Act, it is necessary to begin in 2008. That year, after her parents' separation and divorce, Plaintiff began to experience anxiety, depression, sleep disturbances, and seizures. *Id.* ¶ 10; *see also* Defendant's SoF, [ECF No. 97], ¶ 12. In August 2009, Plaintiff was diagnosed with epilepsy and subsequently prescribed Keppra for her seizures. Plaintiff's SoF, [ECF No. 94-1], ¶ 11; Defendant's SoF, [ECF No. 97], ¶ 12. On nine days between September 2013 and February 2014, Plaintiff received treatment at Linden Oaks Behavioral Health for anxiety, depression, obsessive-compulsive disorder, and school avoidance issues. Plaintiff's SoF, [ECF No. 94-1], ¶ 12; Defendant's SoF, [ECF No. 97], ¶ 13. For seven of those days, Plaintiff was hospitalized. Defendant's SoF, [ECF No. 97], ¶ 13. Plaintiff also was prescribed Celexa and Melatonin for her anxiety, depression, and sleep disorders. Plaintiff's SoF, [ECF No. 94-1], ¶ 12; *see also* Defendant's SoF, [ECF No. 97], ¶ 14.

In early 2014, Defendant found Plaintiff was eligible for special education and related services and prepared an Individualized Education Program ("IEP") for her. IEP (Conference Summary Report), [ECF No. 94-3]; Defendant's SoF, [ECF No. 97], ¶ 19. The IEP reflected, among other things, the following information. Plaintiff had been diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and a seizure disorder. Plaintiff's SoF, [ECF No. 94-1], ¶ 13. Defendant determined that Plaintiff had "limited strength, vitality, or

alertness" and that her disability had a significant adverse impact on her educational performance, including in the areas of fatigue, concentration, attendance, math, and coping skills. *Id.* ¶¶ 14–16. Pursuant to this IEP, Defendant provided Plaintiff with special education classes and services during her freshman year of high school at NCHS. *Id.* ¶ 18; Defendant's SoF, [ECF No. 97], ¶ 20.

In January 2015, Plaintiff and W.P. decided that it was in Plaintiff's best interest to enroll in general education classes. Plaintiff's SoF, [ECF No. 94-1], ¶ 21. Although District 203 discouraged this change and told Plaintiff and W.P. that Plaintiff would not be eligible for any special education classes and services if she enrolled in general education classes, they went ahead. *Id.* ¶ 21; Defendant's SoF, [ECF No. 97], ¶ 20. Since then, Plaintiff has attended general education classes and has not participated in an IEP conference or received special education or related services. Plaintiff's SoF, [ECF No. 94-1], ¶¶ 21, 22, 27; Defendant's SoF, [ECF No. 97], ¶ 21.[4] In her junior year at NCHS, Plaintiff attended an advanced placement class, became an active member and officer of Future Farmers of America, and obtained a teaching assistant position for the following school year. Plaintiff's SoF, [ECF No. 94-1], ¶ 27.[5]

In September 2017, after she switched to DGNHS, Plaintiff began seeing Melanie Bullock, a clinical counselor, because of increasing despondency over the impact of attending the new school. *Id.* ¶ 36; Defendant's SoF, [ECF No. 97], ¶ 17.[6] Bullock initially diagnosed H.P. with an adjustment disorder, which is a milder form of depression. Plaintiff's SoF, [ECF No. 94-1], ¶ 37. Bullock subsequently diagnosed her with Persistent Depressive Disorder and

---

[4] Plaintiff has not asked that District 99 provide her with any special education or Section 504 services. Defendant's SoF, [ECF No. 97], ¶ 35.

[5] DGNHS does not have a Future Farmers of America club. Plaintiff's SoF, [ECF No. 94-1], ¶ 28.

[6] Between her mother's death and her treatment with Bullock, Plaintiff did not receive therapy from a clinical or professional therapist. Defendant's SoF, [ECF No. 97], ¶ 16.

recommended that she see a psychologist. *Id.* ¶ 38. In December 2017, Bullock began assessing Plaintiff for a major depressive disorder because she observed, among other things, passive suicidal thoughts and an increase in apathy and hopelessness. *Id.* ¶ 39. Later that month, Plaintiff saw Dr. Petrit Ndrio, a psychologist, who confirmed the diagnosis of Persistent Depressive Disorder and prescribed Prozac and Adderall for Plaintiff's increasing anxiety and depression. *Id.* ¶ 41. Because attending DGNHS is causing her anxiety and mental stress, Plaintiff has decided that she would rather drop out of school and pursue a GED or High School Equivalency Certificate than complete her senior year at DGNHS. *Id.* ¶ 42.

On July 21, 2017, Plaintiff filed a three-count Complaint for Declaratory and Injunctive Relief ("Complaint") [ECF No. 1]. On August 1, 2017, Plaintiff filed a motion for a preliminary injunction. Plaintiff's Motion for Preliminary Injunction, [ECF No. 9]. On August 16, 2017, the Court held a preliminary injunction hearing and denied Plaintiff's motion in an oral ruling. Minute Entry Dated August 16, 2017, [ECF No. 32]. Two days later, Defendant moved to dismiss the Complaint in its entirety. Defendant's Motion to Dismiss, [ECF No. 36]. The Court dismissed part of Count I (a disparate impact claim) and all of Count II without prejudice, and dismissed Count III with prejudice. Memorandum Opinion and Order, [ECF No. 97]; *see also H.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 2017 WL 5585627 (N.D. Ill. Nov. 20, 2017). The Court did not dismiss any other portion of Count I, including the claim that Defendant violated Title II of the ADA and § 504 of the Rehabilitation Act by refusing to accommodate Plaintiff's disability by waiving the residency requirement and allowing Plaintiff to attend NCHS even though she does not reside in District 203. Because Plaintiff did not file an amended complaint, only her claim under Title II and § 504 remain alive in this case.

## II.    LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of fact, a district court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).  And the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In other words, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, a court does not "evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter" but rather "determine[s] whether there exists a genuine issue of triable fact." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (citation omitted).  The court cannot make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are

jobs for a factfinder. *Anderson*, 477 U.S. at 255; *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court, therefore, must look at the evidence as a jury might, construing the record in the light most favorable to the nonmoving party and avoiding a temptation to decide which party's version of the facts is more likely true. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).

### III.   DISCUSSION

Both parties have moved for summary judgment on Count I of Plaintiff's Complaint, which alleges a violation of Title II of the ADA and § 504 of the Rehabilitation Act. Complaint, [ECF No. 1], ¶¶ 42–48. As described above, Plaintiff claims that Defendant's refusal to waive its residency requirement constitutes a failure to provide her with a reasonable accommodation. Plaintiff says that, even though she resides in District 99, Defendant should allow her to attend NCHS for her senior year of high school because of her disability. For the sake of ease, the Court will use the phrase "Title II discrimination claim" to refer to Plaintiff's claim under the ADA and the Rehabilitation Act.

The ADA and the Rehabilitation Act "both prohibit discrimination against the disabled." *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual

8

with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "[D]isability discrimination under" the ADA and the Rehabilitation Act "can be established in three different ways: '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionality impacts disabled people." *A.H. v. Illinois High Sch. Athletic Ass'n*, --- F.3d --- , 2018 WL 671741, at *2 (7th Cir. Feb. 2, 2018) (quoting *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)).

This is a failure to accommodate case. Although Title II of the ADA "does not contain a specific accommodation requirement," the implementing regulations provide that, "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750–51 (7th Cir. 2006) (en banc) (quoting 28 C.F.R. § 25.130(b)(7)); *see also A.H.*, 2018 WL 671741, at *3. Similarly, the Rehabilitation Act "does not expressly require accommodation," but "a duty to accommodate" has been located "in the statute generally." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (quoting *Wis. Cmty. Serv.*, 465 F.3d at 747); *see also A.H.*, 2018 WL 671741, at *3. "Accommodations are 'only . . . required when *necessary* to avoid discrimination *on the basis of* a disability." *CTL*, 743 F.3d at 529 (quoting *Wisconsin Cmty. Servs.*, 465 F.3d at 751). The ADA and the Rehabilitation Act "are coextensive," *CTL*, 743 F.3d at 528, and governed by "identical" legal standards, *Golden v. Indianapolis Hous.*

*Agency*, 698 F. App'x 835, 837 (7th Cir. 2017); *see also A.H.*, 2018 WL 671741, at *3. In this case, neither party argues that there is a material difference between the ADA and the Rehabilitation Act.

The parties contest every element of Plaintiff's Title II discrimination claim. Among other things, the parties disagree about whether Plaintiff is an individual with a disability, whether she is an otherwise qualified individual with a disability, and whether the requested accommodation is a reasonable modification or would constitute a fundamental alteration. In the Court's view, one issue is dispositive of the pending motions for summary judgment. Even if the Court were to assume that H.P. is an otherwise qualified individual with a disability who was denied a reasonable accommodation, she still should have to satisfy the requirement of but-for causation (sometimes referred to as the "necessity element"), which means she should have to show that, but for her disability, she would have been able to attend NCHS. The undisputed facts in this case show that H.P. cannot establish the requisite causal connection, and that dooms her Title II discrimination claim.

The ADA and the Rehabilitation Act "prohibit discrimination against individuals 'by reason of' the disability, or 'on the basis of' the disability." *A.H.*, 2018 WL 671741, at *4; *see also* 42 U.S.C. § 12132; 29 U.S.C. § 794(a); 28 C.F.R. §§ 35.130(b)(7), 41.53; *CTL*, 743 F.3d at 529 ("Accommodations are 'only . . . required when *necessary* to avoid discrimination *on the basis of* a disability.") (quoting *Wisconsin Cmty. Servs.*, 465 F.3d at 751). Both statutes require "proof of causation." *A.H.*, 2018 WL 671741, at *4. In particular, the plaintiff must satisfy a "but for" standard by showing "that, 'but for' [her] disability, [s]he would have been able to access the services or benefits desired.'" *A.H.*, 2018 WL 671741, at *4 (quoting *Wisconsin Cmty. Servs.*, 465 F.3d at 752). Plaintiff concedes as much, acknowledging that she must show

there is a "causal connection between [her] disability and . . . ineligibility." Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on Count I of Plaintiff's Complaint ("Plaintiff's Opening Brief"), [ECF No. 94], at 5–6 (quoting *Washington*, 181 F.3d at 848).

Here, Defendant is excluding Plaintiff from participation in or denying her the benefits of attending NCHS because she does not reside in District 203. Defendant's residency requirement precludes an identically situated person without a disability from attending NCHS. Moreover, Plaintiff does not reside outside District 203 because of her disability. Instead, she lives in District 99 because, after her mother's death, she went to live with her father, who resides in that District. Even if the Court were to assume for the sake of argument that waiving the residency requirement and allowing Plaintiff to attend NCHS would be a reasonable accommodation that does not fundamentally alter Defendant's services, programs, or activities, Plaintiff's Title II discrimination claim would fail. Plaintiff still would have to show that she is not being allowed to attend NCHS "by reason of" or "on the basis of" her disability. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a); 28 C.F.R. § 35.130(b)(7). It is on this fundamental element that Plaintiff's claim falters. She cannot attend NCHS because she does not reside in District 203, not because she has or may be a person with a disability, and the fact that she resides outside the District has nothing to do with her alleged disability.[7] *See generally A.H.*, 2018 WL 671741 (holding that

---

[7] The Court did not address this deficiency in Plaintiff's claim in its Memorandum Opinion and Order granting in part and denying in part Defendant's Motion to Dismiss. Memorandum Opinion and Order, [ECF No. 97]. Defendant did not raise this ground as a basis of its motion to dismiss in its opening brief. Memorandum in Support of Defendant Naperville Community Unit School District #203's Motion to Dismiss, [ECF No. 40]. In its reply brief, Defendant alluded to the need for Plaintiff to show that her disability was a "but for" cause of Defendant's denial of her request to attend NCHS. Defendant Naperville Community Unit School District #203's Reply Brief in Support of Its Motion to Dismiss, [ECF No. 47], at 4–6. "[I]t is well-established that arguments raised for the first time in [a] reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011). Therefore, there was no need for the Court to address the belatedly raised argument in its Memorandum Opinion and Order.

the ADA and the Rehabilitation Act did not require the Illinois High School Association to adopt separate para-ambulatory qualifying times and divisions because the plaintiff student did not showing such an accommodation was necessary to avoid discrimination "by reason of" or "on the basis of" his disability); *C.S. v. Ohio High School Athletic Association*, 2015 WL 4575217 (S.D. Ohio July 29, 2015) (holding that a disabled student seeking a waiver of an in-state residency requirement to allow him to compete in interscholastic athletics could not satisfy the necessity element under the ADA and the Rehabilitation Act because residency out-of-state, rather than his disability, caused his ineligibility); *see also A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 263 F. Supp. 3d 705, 721–23 (N.D. Ill. 2017); *Lyon v. Illinois High Sch. Ass'n*, 2013 WL 309205, at *3–5 (N.D. Ill. Jan. 25, 2013); *Sudduth v. Donnelly*, 2009 WL 918090, at *6–7 (N.D. Ill. Apr. 1, 2009).

Three Seventh Circuit decisions, one of which was issued just last week, are instructive. The first is *Washington v. Indiana High School Athletic Association, Incorporated*, 181 F.3d 840. In that case, the plaintiff, Eric Washington ("Washington"), was a learning disabled student who struggled mightily in elementary school and was held back in the eighth grade. *Id.* at 842. During the second semester of the 1994–95 academic year, Washington began his high school education at Lafayette Jefferson High School. *Id.* He "continued to fail" and, at the advice of a school counselor, dropped out of school early in the 1996–97 academic year, which would have been his junior year of high school. *Id.* After about a year off school and a chance encounter with a basketball coach at a new high school, Washington enrolled at Central Catholic High School ("Central Catholic"), where he resumed his education and started playing on the school's basketball team. *Id.* Then Washington ran into a problem during the 1998–99 basketball season. *Id.* The Indiana High School Athletic Association ("IHSAA") had an "eight semester rule" that

limited "a student's athletic eligibility to the first eight semesters following the student's commencement of the ninth grade." *Id.* Under this rule, Washington's athletic eligibility expired after the first semester of the 1998–99 academic year, which was before his graduation from Central Catholic. *Id.* Central Catholic applied to IHSAA for a waiver of the eight semester rule, asking IHSAA not to count the semesters during which Washington was not enrolled in any high school when determining his athletic eligibility under the eight semester rule. *Id.* at 842–43. The IHSAA denied the request. *Id.* at 843. Washington and Central Catholic (collectively, "the plaintiffs") then sued the IHSAA, claiming its refusal to grant a waiver constituted a failure to accommodate Washington's disability in violation of Title II of the ADA. *Id.*

On appeal, the Seventh Circuit said the plaintiffs "must establish that the IHSAA rendered [] Washington ineligible to play 'by reason of' his disability." *Id.* at 846. Phrased another way, "[t]here must be a causal connection between" Washington's disability and his ineligibility. *Id.* at 848. To satisfy the causal inquiry, the plaintiff had to "establish that, *but for his learning disability,* [Washington] would have been eligible to play sports in his junior year." *Id.* (emphasis added). The IHSAA argued the required connection was not present because Washington's ineligibility stemmed from "the passage of time," not his disability. *Id.* The Seventh Circuit rejected this argument, however, because there was "ample evidence" to support the district court's finding that Washington's disability caused him to drop out of school. *Id.* at 849.

Plaintiff's attempt to fit this case into the *Washington* framework does not work. The Seventh Circuit's decision in *Washington* turned on the fact that Washington's learning disability *caused* him to drop out of school, which is what in turn made him ineligible under the eight semester rule. For this case to be analogous to *Washington*, Plaintiff would need to identify a

causal connection between her disability and her residence outside District 203 (which, again, is what makes her ineligible to attend NCHS). One can imagine a set of facts that would be sufficient to make this showing. For instance, a plaintiff's disability potentially could require her to reside outside of District 203 for all or part of a school year. In this case, however, Plaintiff neither argues nor identifies evidence that her disability causes her to live outside District 203. As already noted, the undisputed fact is that Plaintiff resides where she does because, after her mother's death, she moved in with her father who lived and still lives in District 99. There is no evidence that Plaintiff's disability caused her father to move to Lisle in the first instance or to remain there after Plaintiff came to live with him. Therefore, *Washington* does not support Plaintiff's claim in this case and, instead, demonstrates why she falls short of satisfying the requirements for a Title II discrimination claim.

The next instructive Seventh Circuit decision is *Wisconsin Community Services, Incorporated v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006). In *Wisconsin*, the plaintiff, Wisconsin Community Services ("WCS"), was a non-profit organization that provided inpatient and outpatient services to individuals with severe mental illnesses. *Id.* at 740. After running out of space in its existing facility, WCS identified a new building that it wanted to purchase. *Id.* at 741. The local zoning laws precluded WCS from operating a health clinic in the building unless WCS obtained a special use permit. *Id.* So, WCS entered into an agreement to buy the building that was contingent on receiving the required permit. *Id.* After multiple hearings before the Milwaukee Board of Zoning Appeals and a stop in federal court along the way, the Board of Zoning Appeals denied WCS's application for the permit. *Id.* at 741–45. WCS then sued the City of Milwaukee ("the City"), claiming the refusal to grant the permit violated the ADA and the Rehabilitation Act. *Id.* at 745. The district court granted partial summary judgment in

WCS's favor, holding the City should have granted the permit as a reasonable accommodation of the disabilities of WCS's patients. *Id.* at 740, 753.

The Seventh Circuit reversed the district court's decision and found the district court erred by failing to apply a "but for" causation standard. *Id.* at 755–56. The court of appeals explained that both the ADA and the Rehabilitation Act require a plaintiff pursuing a failure-to-accommodate claim to show that the requested modification is necessary to avoid discrimination on the basis of disability. *Id.* at 754; *see also id.* at 746–53. Citing its earlier decision in *Washington*, the Seventh Circuit emphasized that the necessity element should be framed as a "causation inquiry" that could be satisfied "only when the plaintiff shows that, 'but for' his disability, he would have been able to access the services or benefits desired." *Id.* at 754. The Seventh Circuit pointed out that WCS was unable to satisfy the criteria for obtaining a special use permit because it wanted "to open a non-profit health clinic in a location where the City desired a commercial, taxpaying tenant instead." *Id.* As the Seventh Circuit recognized, "the City would have rejected similar proposals from non-profit health clinics serving the non-disabled." *Id.* The Seventh Circuit held that, because the disabilities of WCS's patients were not "the cause-in-fact" of the City's refusal to grant the requested accommodation, WCS could not satisfy the necessity element. *Id.*

The final Seventh Circuit case that merits extended discussion is *A.H. v. Illinois High School Association*, which was issued on February 2, 2018. 2018 WL 671741. In that case, the plaintiff student, A.H., was a successful three-sport athlete at Evanston Township High School. *Id.* at *1. A.H. had a disability that "hinder[ed] crucial parts of his body that [were] essential for running," but he was a full member of the school's track team and was "considered an elite athlete within the disabled athletic community." *Id.* Despite his impressive athletic ability, A.H.

could not meet the qualifying times for the "two most important track meets," which were organized by the defendant Illinois High School Association ("IHSA"). *Id.* at *2. In fact, even the world record holders for the T-36 classification—which is for students who, like A.H., have disabilities that impair their muscular control, balance, coordination, and range of motion— would have been unable to meet the qualifying times. *Id.* at *1–2. A.H. asked IHSA to accommodate his disability by, among other things, creating "a separate division with different time standards for para-ambulatory runners in the Sectional and State championship track meets, as well as the annual 5K Road Race." *Id.* *1; *see also id.* at *2. The IHSA refused, and A.H. then filed suit under the ADA and the Rehabilitation Act. *Id.* at *2–3.

On appeal, the Seventh Circuit affirmed the district court's decision to grant summary judgment in favor of IHSA. *Id.* at *1. The court of appeals first addressed the issue of but-for causation. *Id.* at *4–5. The Seventh Circuit summarized the principles discussed above regarding the "but-for" causation standard and described its prior ruling in *Washington*. *Id.* at *4. The court of appeals framed the benefit sought by A.H. as qualifying for IHSA-managed meets (rather than simply having a meaningful opportunity to qualify). *Id.* at *5. The Seventh Circuit explained that qualifying for State is extremely difficult because the IHSA's time standards, which are designed to make races competitive, exclude 90% of all runners on IHSA-member teams. *Id.* at *5. As the court of appeals put it, "The demanding qualifying times established by the IHSA exclude able-bodied and disabled runners alike." *Id.* Because the "odds [were] overwhelming" that A.H. would not be able to qualify if he were not disabled, the Seventh Circuit held that he could not satisfy the causation element of his failure-to-accommodate claim. *Id.*

In short, *Washington*, *Wisconsin*, and *A.H.* stand for the proposition that a Title II discrimination claim based on a failure to provide a reasonable accommodation cannot survive unless there is a "but for" causal connection between a plaintiff's disability and the allegedly discriminatory exclusion or denial. As explained above, Plaintiff's claim here fails because there is no causal connection between her alleged disability and her inability to attend NCHS. Plaintiff is ineligible to attend NCHS *solely because* she is not a resident of District 203. If Plaintiff resided in District 203, she would be permitted to attend NCHS even if her alleged physical and mental impairments remained unchanged. That means Plaintiff cannot attend NCHS "solely by virtue of what [she has] in common with other people" who do not have disabilities. *See A.H.*, 263 F. Supp. 3d at 722 (quoting *Wisconsin Cmty. Servs.*, 465 F.3d at 748).

Relying in large part on *Washington*, a district court in the Southern District of Ohio also rejected a claim that is similar to the one asserted by Plaintiff in this case. In *C.S. v. Ohio High School Athletic Association*, the plaintiff, C.S., was a student with a learning disability who resided with his parents in Kentucky but attended a private high school in Ohio named Summit Country Day School ("Summit"). 2015 WL 4575217, at *1. When deciding whether to send C.S. to Summit, his parents considered a similar school located in Kentucky, but they ultimately concluded Summit provided better educational services to accommodate C.S.'s disability. *Id.* at *2–3. Summit was a member of the Ohio High School Athletic Association ("OHSAA"), which was an association of public and private schools responsible for promulgating bylaws that governed member schools' athletic programs. *Id.* at *4. One of OHSAA's rules provided that students were ineligible for interscholastic athletics if their parents resided outside Ohio, as C.S. and his parents did. *Id.* at *1, 4. Summit and C.S.'s parents sought a waiver of this in-state residency rule as a reasonable accommodation for C.S.'s disability, but OHSAA denied the

request. *Id.* at *4. That led C.S.'s parents to file a lawsuit on C.S.'s behalf against OHSAA alleging that its failure to accommodate his disability by granting the requested waiver violated Titles II and III of the ADA and the Rehabilitation Act. *Id.* at *1, 6–7.

The plaintiffs eventually moved for a permanent injunction requiring OHSAA to waive the residency rule. *Id.* at *1. Citing *Wisconsin* and *Washington*, the court noted that the plaintiffs would have to show a causal connection between C.S.'s disability and his eligibility to play soccer. *Id.* at *7. The court succinctly explained that C.S. was ineligible because his parents resided outside Ohio and that C.S. would be ineligible even if he were not disabled. *Id.* at *8. The plaintiffs argued that the required causal connection existed because, but for C.S.'s disability, he would have attended a school in Kentucky, rather than in Ohio. *Id.* The court rejected this argument, noting the services that Summit provided to accommodate C.S.'s disability were available at another school located in Kentucky. *Id.* at *8–9. Ultimately, the court denied the motion for a permanent injunction on the basis that "[t]he 'but for' causation of C.S.'s ineligibility [was] his parents' residency in Kentucky," not his disability. *Id.* at *9–10. In the Court's view, *C.S.* is on all fours with the present case for the reasons explained throughout this Memorandum Opinion and Order.

Plaintiff argues that she is unable to adjust to a new school (at least in the period of time left during her senior year) because of her disability. *See*, *e.g.*, Plaintiff's Opening Brief, [ECF No. 94], at 6, 8, 12–13; Plaintiff's Response to Defendant's Motion for Summary Judgment on Plaintiff's Complaint, [ECF No. 101], at 10. According to Plaintiff, this establishes a causal connection between her disability and her need for the requested waiver of Defendant's residency requirement so that she can attend NCHS. *Id.* at 12–13. Plaintiff, though, gets the causation inquiry backwards. In *Wisconsin*, WCS made a related argument, saying "the

necessity element is satisfied simply when a modification *helps* the disabled, regardless of whether it is *necessary to alleviate discrimination*." *Wisconsin Cmty. Servs.*, 465 F.3d at 754 (some emphasis added). The Seventh Circuit rejected this argument, again emphasizing that, under Title II of the ADA and the Rehabilitation Act, "a plaintiff must show that, 'but for' its disability, it would have received the ultimate benefit being sought." *Id.* at 755. Plaintiff has not and cannot show that, but for her disability, she would have been able to attend NCHS (*i.e.*, receive the ultimate benefit being sought).[8]

If Plaintiff had carried her burden at the summary judgment stage with respect to the causation requirement, then the Court would have considered the additional elements of a failure-to-accommodate claim under the ADA and the Rehabilitation Act, including whether Plaintiff is an individual with a disability, whether she is otherwise qualified within the meaning of the statutes and their implementing regulations, and, relatedly, whether the requested accommodation is a reasonable modification or would be a fundamental alteration. The Court considered addressing these additional elements even though the causation issue is dispositive. The parties, however, developed the record very poorly during discovery and at summary judgment on these aspects of Plaintiff's claim, and their briefs on these additional elements leave much to be desired. Therefore, the Court will not reach out unnecessarily to address issues that are not critical to its decision on other grounds.

Before concluding, a couple of additional matters should be addressed. First, Plaintiff says District 203 is "insisten[t] on keeping [Plaintiff] out of [its] schools" because it is "fixated on" the efforts of residents of Hidden Lake to have their subdivision detached from Districts 68 and 99 and attached to District 203. Plaintiff's Opening Brief, [ECF No. 94], at 3–4; *see*

_____

[8] As *A.H.* illustrates, it is necessary to accurately identify the service, program, or activity at issue. In this case, Plaintiff is arguing that she should be allowed to attend NCHS in District 203. Plaintiff is not asking for any accommodation that would allow her to continue to attend a school in District 99.

Memorandum Opinion and Order, [ECF No. 97]. Plaintiff does not cite any evidence in support of this contention. Moreover, if Plaintiff is right, that actually would undermine her claim under the ADA and the Rehabilitation Act because the cause of Defendant's allegedly discriminatory conduct would be its concern about or animus toward residents of Hidden Lake, not Plaintiff's disability.

Plaintiff also maintains "[t]here is nothing morally right" about refusing to allow Plaintiff to attend NCHS. Plaintiff's Reply, [ECF No. 100], at 2. Plaintiff may be correct. Defendant seemingly could voluntarily choose to accommodate Plaintiff for her senior year of high school if it wanted to do so. The Illinois School Code permits school districts to allow a non-resident student to attend a school in an adjacent district "when requested for the student's health and safety" and agreed to by both districts. 105 ILL. COMP. STAT. 5/10-22.5a(a). But that does not mean Plaintiff can satisfy the elements of a claim under the ADA or the Rehabilitation Act with this moral suasion argument. The statutes that Congress passed as the ADA and the Rehabilitation Act do not give Plaintiff a cause of action against Defendant for refusing to allow Plaintiff to finish high school at NCHS even though she no longer resides in District 203 regardless of whether that would be a kinder, more caring, and more humane way to approach the issue. Therefore, even if Defendant's decision may seem callous and insensitive, it does not violate the ADA or the Rehabilitation Act.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment on Count I of Plaintiff's Complaint [ECF No. 93] is denied and Defendant's Motion for Summary Judgment on the Plaintiff's Complaint [ECF No. 95] is granted.

_____

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 8, 2018